Merrimack
No. 84-586

THE STATE OF NEW HAMPSHIRE

v.

GEORGE DERY

July 3, 1985

*Stephen E. Merrill,* attorney general (*Robert B. Muh,* attorney, on the brief), by brief for the State.

*Joanne S. Green,* assistant appellate defender, of Concord, by brief for the defendant.

DOUGLAS, J. The Superior Court (*Nadeau,* J.) transferred the following question to this court: "Before the results of a chemical test may be introduced into evidence against a defendant charged with negligent homicide under RSA 630:3, II, must the officer procuring the test comply with the prerequisites of RSA 265:87?" RSA 265:87 outlines the prerequisites to admissibility of a blood alcohol content test. We answer the transferred question in the affirmative and remand.

The parties agree to the following facts. On October 16, 1983, State Trooper Vernon Fowler was called to the scene of a two-vehicle fatal accident in Epsom. Following an investigation of the accident, Trooper Fowler went to the Concord Hospital, where all of the accident victims had been taken. At the hospital, Fowler questioned the defendant, George Dery, the operator of one of the vehicles involved in the accident. While questioning the defendant, Fowler noted the smell of alcohol emanating from the defendant and also observed that the defendant's eyes were glassy and bloodshot. Based upon his observations, statements of the defendant, and information he had obtained from witnesses at the scene of the accident, Fowler placed the defendant under arrest for negligent homicide. *See* RSA 630:3, II. Fowler then asked the defendant to submit to a blood alcohol content test. The defendant consented to the taking of a blood sample.

Thereafter, the defendant was charged with negligent homicide by "caus[ing] the death of another . . . [i]n consequence of his being under the influence of intoxicating liquor . . . while operating a propelled vehicle . . . ." RSA 630:3, II. Prior to trial, the defendant filed a motion to suppress the results of the blood alcohol content test on the ground that the State had failed to comply with the prerequisites to admissibility set forth in RSA 265:87. The court granted the motion, and the State moved for reconsideration of the ruling, arguing that the requirements of RSA 265:87 are not applicable to felonies outside of the motor vehicle code, RSA title XXI. The court deferred ruling on the motion and transferred the question to this

court. The State has conceded that none of the procedures specified in RSA 265:87 were followed.

RSA 265:87 provides:

> "I. Before *any test specified in RSA 265:84* is given, the law enforcement officer shall:
>
> (a) Inform the arrested person of his right to have a similar test or tests made by a person of his own choosing;
>
> (b) Afford him an opportunity to request such additional test; and
>
> (c) Inform him of the consequences of his refusal to permit a test at the direction of the law enforcement officer.
>
> II. If the law enforcement officer fails to comply with the provisions of this section, the test shall be inadmissible as evidence in any proceeding before any administrative officer and court of this state."

(Emphasis added.)

█ The scope of RSA 265:87 is determined by reference to the scope of RSA 265:84 (Supp. 1983). In this regard, RSA 265:84 (Supp. 1983), New Hampshire's implied consent law, encompasses "[a]*ny person* . . . arrested for *any offense* arising out of acts alleged to have been committed while the person was driving . . . while under the influence of intoxicating liquor . . . ." (Emphasis added.) A plain reading of the statute thus indicates that the implied consent law applies to all offenses arising from driving while intoxicated, including negligent homicide.

This construction of the statute is supported by our decision in *State v. Murgatroy*, 115 N.H. 717, 349 A.2d 600 (1975), a case in which we held that under an earlier, but essentially identical, version of the implied consent law, the results of a blood alcohol content test are admissible to prove the offense of negligent homicide. There we opined:

> "In enacting the provisions of the implied consent law RSA 262-A:62, :69-a (Supp. 1975) through 262-A:69-j (Supp. 1975), the legislature indicated that the results of a breathalyzer test could be used in the prosecution of offenses other than violations of RSA 262-A:62 (Supp. 1975). The legislature has given approval to the admission of the results of a breathalyzer test in a prosecution other than under RSA 262-A:62 (Supp. 1975) when it stated in RSA 262-A:69-a (Supp. 1975) 'Any person who operates a motor vehicle upon the public highways of this state shall

be deemed to have given consent to a chemical test or tests of any or all or any combination of the following: blood, urine, or breath, for the purpose of determining the alcoholic or controlled drug content of his blood, *if arrested for any offense* arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor . . . .' (Emphasis added.)"

*Id.* at 719, 349 A.2d at 602. We reaffirmed this holding in *State v. Berry*, 121 N.H. 324, 327–28, 428 A.2d 1250, 1251–52 (1981) (quoting and relying on *Murgatroy* for the proposition that the provisions of the implied consent law apply to *any offense* arising out of acts alleged to have been committed while the person was driving while under the influence of intoxicating liquor).

Although our prior decisions clearly hold that the implied consent law, RSA 265:84 (Supp. 1983), encompasses prosecutions for negligent homicide under RSA 630:3, II and, hence, would dispose of the question presented, the State takes the position that a recent amendment to the laws concerning the taking of a blood alcohol content test renders RSA 265:84 (Supp. 1983) and RSA 265:87 inapplicable to a prosecution for negligent homicide. In order to address the merits of the State's claim, we must review the amendment in question.

New Hampshire's general implied consent law, RSA 265:84 (Supp. 1983), provides that "[a]ny person who drives a vehicle upon the ways of this state shall be deemed to have given consent to a chemical . . . test . . . for the purpose of determining the alcoholic . . . content of his blood . . . ." RSA 265:92 (Supp. 1983) (formerly RSA 262-A:69-e (Supp. 1979)) permits an arrested individual to refuse to submit to a blood alcohol content test, in which case a test cannot be given, and prescribes certain administrative sanctions should an arrested person choose not to submit to a blood alcohol content test.

We considered this latter provision in *State v. Berry supra.* At that time, the statute provided: "if a person *under arrest* refuses . . . to submit to a chemical test . . . none shall be given." RSA 262-A:69-e (Supp. 1979) (emphasis added). We held that, under this statute, the results of a nonconsensual blood alcohol content test, taken from a person arrested for negligent homicide, were inadmissible. *State v. Berry*, 121 N.H. at 327, 328, 428 A.2d at 1251, 1252.

Thereafter, the legislature amended RSA 262-A:69-e (Supp. 1979). *See* Laws 1981, 563:3, :4. That provision now states: "If a person *under arrest for any violation or misdemeanor under RSA 265 refuses* . . . to submit to a test . . . , none shall be given . . . ." RSA

265:92, I (Supp. 1983) (emphasis added). The scope of RSA 265:92, I (formerly RSA 262-A:62-e (Supp. 1979)) thus has been narrowed so that a person arrested for negligent homicide no longer has a statutory right to have a refusal to consent to a blood alcohol content test serve as a basis for excluding the results of the test. *See State v. Wong*, 125 N.H. 610, 627–28, 486 A.2d 262, 273–74 (1984).

The State argues that the purpose of RSA 265:87 is to insure that a defendant's consent is informed, so that he can make a reasoned decision concerning whether to submit to a blood alcohol content test. The State thus argues that since a negligent homicide defendant no longer has the right to refuse to submit to a blood alcohol content test, informed consent is immaterial. We disagree.

■■ RSA 265:84 (Supp. 1983), by its terms, does not apply only to persons arrested for violations and misdemeanors under RSA chapter 265. Rather, the statute refers to "[a]ny person . . . arrested for *any offense* arising out of acts alleged to have been committed while the person was driving . . . while under the influence of intoxicating liquor . . . ." (Emphasis added.) The term "offense" includes felonies, misdemeanors and violations. RSA 625:9, II; *see also* RSA 625:9, I (provisions of RSA 625:9 govern the classification of every offense, whether defined in Criminal Code or by other statute). Moreover, negligent homicide under RSA 630:3, II is clearly an offense arising out of acts committed while the defendant was driving while under the influence of intoxicating liquor. *See State v. Wong*, 125 N.H. 610, 618, 486 A.2d 262, 267–68 (1984). Accordingly, under a plain reading of the statutes, *see* RSA 21:2, RSA 265:84 (Supp. 1983) and, thus, RSA 265:87 apply to the instant defendant who has been charged with an offense, negligent homicide, arising out of his driving while under the influence of intoxicating liquor. *See* RSA 630:3, II.

A review of the legislative history does not produce a different result. The 1981 amendment was not intended to limit the scope of RSA 265:84 (Supp. 1983) or RSA 265:87. The legislature stated: "The intention of . . . this [amendment] . . . is to correct any perceived deficiencies in the language of *RSA 262-A:69-e* [recodified as RSA 265:92 (Supp. 1983)] as recognized by the New Hampshire Supreme Court in State v. Berry . . . and to clarify the legislative intent as to the application of *this* statute." Laws 1981, 563:3 (emphasis added). Hence, the 1981 amendment was directed at removing the statutory impediment to admissibility of evidence of a non-consensual blood alcohol content test set out in RSA 262-A:69-e (Supp. 1979) (now codified at RSA 265:92 (Supp. 1983)), where *a felony* defendant did not consent to the test. The amendment was not

directed at the prerequisites to admissibility outlined in RSA 265:87, except to the extent that the warning set forth in subparagraph I(c) is no longer applicable to felony cases.

■ Moreover, we conclude that the State accords too narrow an interpretation to the purpose of RSA 265:87. Although we agree that one of the purposes of RSA 265:87 is to ensure that an arrested individual makes an informed decision concerning whether or not to submit to a blood alcohol content test, *see* RSA 265:87, I(c), this is not the statute's sole purpose. Rather, RSA 265:87 "imposes a positive duty on the officer to do *three equally important* things before taking the test . . . ." *State v. Dunsmore*, 112 N.H. 382, 385, 297 A.2d 230, 232 (1972) (Grimes, J., dissenting) (emphasis added) (construing RSA 262-A:69-c, predecessor to RSA 265:87).

In addition to providing that an arrested individual must be informed of the consequences of a refusal to submit to a blood alcohol content test, the legislature also has directed that an arrested individual be informed of his right to have a similar and independent blood alcohol content test made, RSA 265:87, I(a), and that the individual be provided the opportunity to request such a test, RSA 265:87, I(b). In view of our foregoing analysis, it is clear that the latter two prerequisites apply to negligent homicide defendants. Hence, even if we were to accept the State's argument that since a negligent homicide defendant's refusal no longer operates to exclude the results of a non-consensual blood alcohol content test, his informed consent is immaterial, we would still have to conclude that the State must comply with the other prerequisites contained in RSA 265:87. In fact, to hold that RSA 265:87, I(a) and (b) is not applicable to felony defendants could have constitutional implications. *See State v. Wong*, 125 N.H. 610, 632–33, 486 A.2d 262, 277 (1984) (Douglas, J., concurring specially) (due process guarantees of New Hampshire Constitution require that an individual arrested after February 1, 1983 be provided an additional sample of blood for independent testing); *see also State v. Cornelius*, 122 N.H. 925, 928–31, 452 A.2d 464, 465–68 (1982) (Douglas, J., concurring specially; Batchelder, J., and King, C.J., dissenting).

■■ Accordingly, we conclude that the 1981 amendment does not limit either the scope of the implied consent law, RSA 265:84 (Supp. 1983) or the scope of the procedures specified in RSA 265:87. We therefore hold that the prerequisites of RSA 265:87 apply to an individual arrested for negligent homicide under RSA 630:3, II, and thus answer the transferred question in the affirmative and remand.

*Remanded.*

All concurred.